**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JOSE HERNANDEZ AVILES,<br>Petitioner,<br>vs.<br>TODD BLANCHE, *et al.*,<br>Respondents. | Case No.: 2:26-cv-02189-GMN-BNW<br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

Pending before the Court is Petitioner Jose Hernandez Aviles's First Amended Petition for Writ of Habeas Corpus, (ECF No. 7). Federal Respondents Todd Blanche, Markwayne Mullin, Kerri Ann Quihuis, Ruben Leyva, and David J. Venturella filed a Notice of Non-Opposition, (ECF No. 13).

Because Federal Respondents do not oppose the Petition, and for the reasons discussed below, the Court GRANTS the First Amended Petition and orders Petitioner's immediate release.

## I. BACKGROUND

Petitioner Jose Hernandez Aviles is a native and citizen of Mexico who entered the United States without inspection approximately twenty years ago. (First Am. Pet. 3:2–3, ECF No. 7). Petitioner was arrested for misdemeanor possession of drug paraphernalia on January 21, 2026, and after being released from state custody on July 10, 2026, he was immediately arrested by Immigration and Customs Enforcement ("ICE") and transferred to Nevada Southern Detention Center ("NSDC"). (*Id.* 3:4–8). Petitioner has not received an initial custody determination or a custody redetermination before an immigration judge and currently has a

master calendar hearing scheduled for September 9, 2026.[1] Petitioner asserts that he is a member of the certified class in *Jacobo-Ramirez v. Mullin*, No. 25-cv-02136-RFB-MDC, 2026 WL 879799 (D. Nev. Mar. 30, 2026), because (1) he is a noncitizen detained by ICE, (2) he is currently subject to removal proceedings, (3) he entered the United States without inspection, (4) he is not subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231, and (5) he was detained by ICE while present in the interior of the United States. (First Am. Pet. 5:1–6:6). Respondents do not contest Petitioner's status as a *Jacobo-Ramirez* class member, and do not oppose the First Amended Petition. (*See generally* Not. Non-Opp, ECF No. 13). Petitioner remains detained in NSDC in Pahrump, Nevada. (First Am. Pet. 3:6–8).

## II. LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C.A. § 2241(c)(3). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III. DISCUSSION

Petitioner argues that he is entitled to habeas relief because 8 U.S.C. § 1226(a), not § 1225(b)(2)(A), applies to him, and thus his current detention violates the Immigration and

---

[1] The Court takes judicial notice of the information on Petitioner's EOIR Automated Case Information page because it may take judicial notice of information posted on official government websites. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–999 (9th Cir. 2010); Fed. R. Evid. 201 (allowing a court to take judicial notice of a fact not subject to reasonable dispute in that it is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned).

Nationality Act ("INA") and his right to Due Process under the Fifth Amendment. (*See generally* First Am. Pet.). Alternatively, Petitioner argues that even if § 1225(b)(2)(A) applies, his detention violates his right to Due Process under the Fifth Amendment. (*Id.*). Respondents do not dispute these claims. (*See generally* Not. Non-Opp.).

**A. Violation of INA**

As noted above, Petitioner contends that his detention is governed by § 1226(a), which Respondents do not dispute.

Section 1225 provides that a noncitizen "who is an applicant for admission . . . shall be detained." 8 U.S.C. § 1225(b)(2)(A). Section 1225(a)(1) defines an "applicant for admission" as a noncitizen "present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including [a noncitizen] who is brought to the United States after having been interdicted in international or United States waters)." 8 U.SC. § 1225(a)(1). While "applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)," they are subject to mandatory detention under both provisions. *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). There is no statutory right to a bond hearing for noncitizens detained under § 1225(b). *Id.* at 296–97.

Section 1226, on the other hand, "provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal" and, under subsection (a), the government has broad discretion whether to detain or release. *Rodriguiez Diaz v. Garland*, 53 F.4th 1189, 1106 (9th Cir. 2022) (citing *Jennings*, 583 U.S. at 288). It provides that a detainee may request "a bond hearing before an immigration judge at any time before a removal order becomes final" and "an additional bond hearing whenever he experiences a material change in circumstances." *Id.* at 1197 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19). Section 1226(a) also mandates that the government is required to obtain a warrant

before the noncitizen's arrest and conduct an initial custody determination, among other procedural protections. *See id.* at 1196 (citing 8 C.F.R. § 236.1(c)(8)); *see also* 8 U.S.C. § 1226(a).

The Ninth Circuit recently held that noncitizens "present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." *See Rodriguez Vazquez v. Bostock*, --- F.4th ---, 2026 WL 2196424 (9th Cir. July 30, 2026).[2] Here, there is no dispute that Petitioner was detained in the interior of the United States after having resided here for twenty years. (First Am. Pet. 3:2–4). Accordingly, Petitioner was entitled to the statutory rights conferred by Congress under § 1226(a), and his continued detention violates the INA.

**B. Due Process**

Petitioner next asserts that his detention violates the Due Process Clause of the Fifth Amendment. (First Am. Pet. 8:7–10:21). Respondents do not provide a response to this claim. (*See generally* Not. Non-Opp.).

Under the Fifth Amendment, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Though noncitizens do not enjoy constitutional protections outside the borders of the United States, once a noncitizen "enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. Thus, "[i]t is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation

---

[2] Six other circuit courts have reached the same conclusion. *See generally Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026); *Cirrus Rojas v. Olson*, --- F.4th ---, 2026 WL 2198315 (7th Cir. July 30, 2026); *Santillan Quiroz v. Mullin*, 180 F.4th 1226 (10th Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026); *Guerrero Orellana v. Moniz*, --- F.4th ---, 2026 WL 2352042 (1st Cir. Aug. 13, 2026). Prior to those rulings, both this Court and other courts in this District adopted the same interpretation of section 1226(a). *See, e.g.*, *Jacobo-Ramirez v. Mullin*, --- F. Supp. 3d ---, 2026 WL 879799, at *34–35 (D. Nev. Mar. 30, 2026) (collecting cases).

proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). Moreover, physical freedom "lies at the heart" of the Due Process Clause, *see Zadvydas*, 553 U.S. at 690 (citation omitted), and "notice and an opportunity to be heard" constitute the "fundamental features of due process[.]" *Rodriguez Diaz*, 53 F.4th at 1205 (quoting *Miranda v. Garland*, 34 F.4th 338, 358 (4th Cir. 2022)). Thus, it follows that when the government subjects noncitizens to civil detention without supplying these fundamental procedural safeguards, their actions violate the Due Process Clause.

As another Court in this District has explained, § 1226(a) and its implementing regulations set forth a scheme designed to guarantee certain noncitizens "substantial procedural protections" against the erroneous deprivation of their liberty. *See Jacobo-Ramirez v. Mullin*, --- F. Supp. 3d ---, 2026 WL 879799, at *6 (D. Nev. Mar. 30, 2026) (quoting *Rodriguez Diaz*, 53 F.4th at 1196). "These protections include, but are not limited to, four key procedures for the purposes of this analysis: (1) service of a notice to appear, which provides critical context as to the basis for detention; (2) any arrest and custody under this provision must be pursuant to a lawfully executed administrative warrant; (3) at the outset of detention, a noncitizen detained under this provision receives an initial custody determination by the agency; and (4) the noncitizen then has an ability to appeal said custody determination—i.e., receive a custody redetermination (bond) hearing before an immigration judge ("IJ")." *Rios-Rodriguez v. Blanche*, No. 2:26-cv-02117-RFB-MDC, 2026 WL 2280924, at *4 (D. Nev. Aug. 7, 2026) (citing *Rodriguez Diaz*, 53 F.4th at 1201–02). Conversely, § 1225(b)(2)(A) requires no comparable set of procedures.

To determine whether detention violates due process, courts apply the three-part test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz*, 53 F.4th at 1203–07 ("Ultimately, Mathews remains a flexible test that can and must account for the heightened

governmental interest in the immigration detention context.”).[3] Under *Mathews*, “identification of the specific dictates of due process generally requires consideration of three distinct factors”: (1) “the private interest that will be affected by the official action;” (2) “the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;” and (3) “the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.” *Mathews*, 424 U.S. at 335.

**1. Private Interest**

The first *Mathews* factor considers the private interest affected by the government’s ongoing detention of Petitioner without the opportunity for release on bond. *See Mathews*, 424 U.S. at 335. Here, that is Petitioner’s interest in being free from imprisonment, “the most elemental of liberty interests.” *Hamdi*, 542 U.S. at 529. This interest is especially weighty here, considering the lack of process accorded to Petitioner and the process available to him at the outset of his detention. *See Rodriguez Diaz*, 53 F.4th at 1208 (“[I]n evaluating [a noncitizen’s] interests under the first prong of [] *Mathews*, . . . [courts] must also consider the process [they] received . . . [and] the further process that was available to [them] . . .”). Unlike the noncitizen in *Rodriguez Diaz*, who was afforded the full breadth of procedural protections under § 1226(a), Petitioner was improperly categorized and detained under § 1225(b)(2)(A), which by statute, affords no pre-deprivation process at all.

///

---

[3] The Ninth Circuit in *Rodriguez Diaz* “assumed without deciding” that the *Mathews* test applies in due process challenges to immigration detention. 53 F.4th at 1207. However, the *Rodriguez Diaz* court noted that other circuits have applied *Mathews* in considering due process challenges to immigration detention. *Id.* at 1204–05 (citing *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022); *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020)). The court also explained that the Ninth Circuit has regularly applied *Mathews* in due process challenges to removal proceedings. *Id.* at 1206 (citing *Cruz Pleitez v. Barr*, 938 F.3d 1141, 1145–46 (9th Cir. 2019); *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1160–61 (9th Cir. 2004); *Martinez-de Bojorquez v. Ashcroft*, 365 F.3d 800, 805 (9th Cir. 2004). Accordingly, the Court will apply the *Mathews* test here.

**2. Risk of Erroneous Deprivation**

The second factor considers "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. Here, the risk of erroneous deprivation of Petitioner's liberty is high under the government's interpretation of § 1225(b)(2)(A), which accords its immigration officials "sole, unguided, and unreviewable discretion to detain" noncitizens like Petitioner "without any individualized showing that their detention is warranted, nor any process for [noncitizens] to challenge the exercise of that discretion." *See Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1161 (D. Nev. 2025).

That discretion stands in stark contrast to the procedural safeguards mandated by Congress in § 1226(a), which protect against the erroneous deprivation of liberty. *See Rodriguez Diaz*, 53 F.4th at 1210. First, a noncitizen cannot be detained without notice of the basis of their detention. The basis for detention is communicated via a notice to appear ("NTA"), which must be signed and served by a designated immigration officer. *See* 8 U.S.C. § 1229(a)(1); 8 C.F.R. §§ 239.1, 1003.15(b)(1). Second, a noncitizen cannot be arrested without an administrative warrant. *See* 8 C.F.R. § 236.1(b). Third, when a noncitizen is arrested under § 1226(a), an immigration official must make an "initial custody determination," wherein the noncitizen has a *pre-deprivation* opportunity to "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceedings." *Rodriguez Diaz*, 53 F.4th at 1196; 8 C.F.R. §§ 236.1(c)(8), (g).

Fourth, a noncitizen has the right to appeal that initial custody determination to an IJ based on individualized evidence, wherein the IJ will order release on bond if the noncitizen establishes that they are not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *Rodriguez Diaz*, 53 F.4th at 1197. At this

hearing, the noncitizen bears the evidentiary burden of overcoming the presumption of detention. *See In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006) (allocating the evidentiary burden to disprove dangerousness or flight risk at a bond hearing before an IJ). "That is why, when a noncitizen seeks to challenge their detention through a custody *redetermination* hearing (*i.e.*, a bond hearing), the noncitizen has already been provided notice of the legal bases—*at minimum*—underlying the government's custody determination, such that the hearing presents an opportunity to disprove and rebut the agency's determination." *Rios-Rodriguez*, 2026 WL 2280924, at *7 (citing 8 C.F.R. § 236.1(d) (delegating authority to IJs to hear "*[a]ppeals* from custody decisions" upon an application by the detainee "*[a]fter* an initial custody determination" by a designated officer) (emphasis added)). Operating together, "[t]hese procedures ensure[] that the risk of an erroneous deprivation would be relatively small." *Id.* at 1210.

Here, Petitioner was not afforded these procedural protections. Specifically, Petitioner did not receive an initial custody determination, which Respondents do not dispute. (First Am. Pet. 9:12–22); (*see generally* Not. Non-Opp.). Thus, the Court concludes that risk of erroneous deprivation is substantial.

**3. Government's Interest**

The third and final *Mathews* factor considers the "government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal" noncitizens and "securing [a noncitizen's] ultimate removal," are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208. However, the government has shown its ability to satisfy those interests through the statutory scheme of § 1226(a) for years. *Rios-Rodriguez*, 2026 WL 2280924 at *9. Moreover, those interests are ultimately

*served*, not hindered, by the procedural protections of § 1226(a). Specifically, § 1226(a)'s procedural protections reduce the fiscal and administrative burden of civil detention by ensuring that only noncitizens who are actually dangerous or a flight risk are detained. *See Escobar Salgado*, 809 F. Supp. 3d at 1162; *see also Jacobo-Ramirez*, 2026 WL 879799, at *30 ("Recent estimates by the federal government find that supervised release programs such as those available under § 1226 cost less than $4.20 each day per participant, compared with detention costs of $152 per day.") (citation omitted). Accordingly, the Court concludes that the third *Mathews* factor also weighs in favor of Petitioner.

For the foregoing reasons, the Court finds that all three of the *Mathews* factors weigh heavily in favor of Petitioner, and therefore his detention under § 1225(b)(2)(A) violated his rights under the Due Process Clause of the Fifth Amendment.

**C. Remedy**

Because the Court finds that Petitioner has been subjected to erroneous detention in violation of his statutory rights and due process rights under the Fifth Amendment, the Court next determines the appropriate remedy for those violations. *See Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005) (citation omitted) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief. . . . The court is free to fashion the remedy as law and justice require . . . ."); *Brown v. Davenport*, 596 U.S. 118, 132 (2022) (quoting 28 U.S.C. § 2243) (same). Petitioner asks this Court to order his immediate release, or, in the alternative, to order that he receive a constitutionally adequate bond hearing. (First Am. Pet. 11:15–20). For the following reasons, the Court finds that immediate release is the appropriate equitable remedy in this case.

As explained above, the Court concludes that Respondents did not provide Petitioner with an initial custody determination, and indeed, offer no legal basis for Petitioner's detention at all. (First Am. Pet. 9:12–22); (*see generally* Not. Non-Opp.). It thus finds that Petitioner's

detention has been "unlawful from its inception because ICE detained him under the wrong statute and without affording him any notice or process whatsoever, much less the procedures due under Section 1226(a)." *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 319–20 (E.D.N.Y. 2025), *appeal dismissed*, No. 26-219, 2026 WL 1208948 (2d Cir. Feb. 25, 2026) (ordering a noncitizen's release on this basis and finding that a subsequent "bond determination by a DHS officer or an immigration judge would not remedy the core constitutional violation at issue[.]"). "In the absence of an initial custody determination—which establishes a lawful basis for detention in the first instance—a subsequent bond hearing 'is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip' Petitioner of his freedom." *Rios-Rodriguez*, 2026 WL 2280924 at *10 (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025)).

Respondents cannot cure these violations by conducting a *post-hoc* bond hearing; where physical liberty is at stake, some form of *pre-deprivation* process, like the procedural protections afforded by § 1226(a), is necessary. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and an opportunity for hearing appropriate to the nature of the case.'") (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)). Indeed, ordering a bond hearing rather than Petitioner's immediate release would effectively bless Respondents' "detain first, justify later" approach, which entirely disregards § 1226(a)'s regulatory framework. *See, e.g.*, *Sanchez Sandoval v. Blanche*, No. 2:26-cv-01387-RFB-NJK, 2026 WL 1803675, at *4 (D. Nev. June 23, 2026); *see also E.A.T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); *Domingo v. Kaiser*, No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3

(N.D. Cal. July 14, 2025) ("Even if Petitioner[] received a prompt post-detention bond hearing under § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion; that is, his potentially erroneous detention.").

Moreover, many courts in this Circuit have ordered the immediate release of noncitizens like Petitioner who were unlawfully detained under § 1225(b)(2)(A) in violation of the INA. *See, e.g.*, *Sanchez Sandoval*, 2026 WL 1803675, at *3–4 (ordering immediate release of noncitizen whose detention under § 1225(b)(2)(A) violated the INA); *Rios-Rodriguez*, 2026 WL 2280924 at *9–12 (same); *Garcia-Gonzalez v. Larose*, No. 3:26-cv-04248-RBM-DDL, 2026 WL 2244058, at *2 (S.D. Cal. Aug. 4, 2026) (same); *Garcia v. Warden*, No. 1:26-cv-04456-KES-EGC (HC), 2026 WL 2268776, at *1 (E.D. Cal. Aug 6, 2026) ("This Court has typically ordered immediate release in petitioner's circumstances because respondents detained petitioner based on their position that he was subject to mandatory detention under § 1225(b), and they did not assert a basis for petitioner's detention under § 1226(a).") (citing *J.A.C.P. v. Wofford*, No. 1:25-cv-01354-KES-SKO (HC), 2025 WL 3013328, at *8 (E.D. Cal. Oct. 27, 2025)). Accordingly, the Court finds that Petitioner's immediate release is the appropriate remedy.

The Court also finds, based on Respondents' extensive history[4] of conduct with respect to these cases, that it must adopt additional equitable remedies to ensure that Respondents abide by the appropriate statutory authority, implementing regulations, and procedures.[5] *See United*

---

[4] Federal Respondents have engaged in a systemic pattern of noncompliance with orders issued by courts in this District in related habeas matters. These violations include, *inter alia*: removing petitioners from the District of Nevada after being ordered not to; failing to release petitioners as ordered; disregarding deadlines; failing to provide constitutionally adequate bond hearings; and imposing unlawful release conditions. *See, e.g.*, *Jimenez Gomez v. Dep't of Homeland Sec.*, No. 2:26-cv-00922-RFB-DJA, 2026 WL 1164736, at *2–3 (D. Nev. Apr. 29, 2026) (collecting examples); *Rios-Rodriguez*, 2026 WL 2280924 at *11 n. 11 (collecting examples).

[5] The Court adopts this additional equitable remedy, in part, as a means of safeguarding Petitioner's due process rights. The Ninth Circuit has, when deciding a facial challenge to 8 U.S.C. § 1226(a) brought under the Fifth Amendment's Due Process Clause, recognized that § 1226(a) and its implementing regulations set forth a

*States v. Handa*, 122 F.3d 690, 691 (9th Cir. 1997) (describing the broad, flexible power federal courts possess to fashion equitable relief in the context of habeas corpus proceedings). Here, the Court finds it appropriate to require that, in the event DHS seeks to re-detain Petitioner under § 1226(a), Federal Respondents must provide him with a pre-deprivation bond hearing wherein the government must prove, by clear and convincing evidence, that the detainee presents a flight risk of a danger to the community such that detention is appropriate. *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024) (citation omitted) (reviewing EOIR's compliance with a district court's conditional writ, which ordered EOIR to conduct a bond hearing where the government was required to "show by clear and convincing evidence that the detainee presents a flight risk or a danger to the community."); *Gonzalez-Juarez v. Bondi*, 137 F.4th 996, 1003 (9th Cir. 2025) (describing *Martinez*). While the Court does not take this step lightly, it finds it is necessary because of Federal Respondents' egregious violations of the law and Petitioner's rights to date.[6]

## IV. <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Petitioner's First Amended Petition for Writ of Habeas Corpus (ECF No. 7), is **GRANTED**.

**IT IS FURTHER ORDERED** that Respondents must **RELEASE** Petitioner from detention on his personal recognizance on **August 21, 2026**, between the hours of **12:00 P.M. and 3:00 P.M.** Counsel for Petitioner (or their designee/agent) will be permitted to wait in the Federal Justice Tower lobby during the release window.

---

scheme designed to guarantee certain noncitizens "substantial procedural protections" against the erroneous deprivation of their liberty. *Rodriguez Diaz*, 53 F.4th at 1196. "[The Ninth Circuit] in fact cited § 1226(a)'s procedures as a reference point for what [the Ninth Circuit] believed should be required under [§§ 1225(b), 1226(c), and 1231(a)(6)]." *Id.* at 1202. Because Petitioner has also raised a due process challenge to his detention, the Court finds it appropriate to ensure that those rights are protected moving forward.

[6] For example, Federal Respondents have admitted in open court that, as a matter of policy, they will not conduct initial custody determinations for noncitizens whose detention is governed by § 1226(a). (*See* Hr'g Tr. 17:22–20:10, *Jacobo Ramirez*, No. 2:25-cv-02136-RFB-MDC (D. Nev. June 1, 2026) (ECF No. 157).

**IT IS FURTHER ORDERED** that Respondents are prohibited from imposing release conditions that substantially interfere with Petitioner's liberty, such as location monitoring, without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing

**IT IS FURTHER ORDERED** that Respondents must return Petitioner's personal property upon his release.

**IT IS FURTHER ORDERED** that the parties must file a **JOINT** Status Report by **August 22, 2026**, to certify compliance with the Court's Order, including the date and time of Petitioner's release.

**IT IS FURTHER ORDERED** that Respondents may not re-detain Petitioner during the pendency of his current removal proceedings until after an immigration court hearing is held, with adequate notice, to determine whether detention is appropriate under the INA and its implementing regulations. To the extent the government seeks to detain Petitioner under 8 U.S.C. § 1226(a), it bears the burden of establishing that detention is appropriate by clear and convincing evidence.

**IT IS FURTHER ORDERED** that Counsel for Respondents is directed to immediately provide notice of this Order to the parties they represent.

The Clerk of Court is kindly directed to enter judgment in favor of Petitioner.

**DATED** this 20 day of August, 2026.

____________________________
Gloria M. Navarro, District Judge
United States District Court